IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| **DENNIS W. SMITH,** )<br>)<br>Plaintiff,    )<br>)<br>v.    )<br>)<br>**VIRGIN ISLANDS HOUSING AUTHORITY;** )<br>**VI HOUSING AUTHORITY BOARD;** )<br>**MICHAEL R. HOLLIS, as Executive** )<br>**Administrator of VIHA and Individually;** )<br>**WAYNE HOOD, as Director of Housing** )<br>**Operation at VIHA and Individually; CARMEN** )<br>**VALENTI, as Chairman of the VIHA Board** )<br>**and Individually; and U.S. DEPARTMENT OF** )<br>**HOUSING AND URBAN DEVELOPMENT,** )<br>)<br>Defendant.    )<br>_____) | **CIV. NO.: 09-cv-00011** |

## **MEMORANDUM OPINION**

Finch, Senior Judge

THIS MATTER is before the Court on the motion to dismiss by defendants Carmen Valenti, ("Valenti") and the U.S. Department of Housing and Urban Development ("HUD"). Plaintiff Dennis Smith ("Smith") brings this action for violations allegedly stemming from the termination of his employment with the Virgin Islands Housing Authority ("VIHA"). HUD and Valenti seek to dismiss the matter primarily on the ground of immunity from suit and also contend that Smith has failed to state a cause of action against Valenti. Smith opposes the motion to dismiss on the basis that HUD and Valenti are not entitled to invoke immunity. For the reasons stated below, HUD and Valenti's motion to dismiss will be GRANTED.

**I.    Background**

Smith's employment with the VIHA began on June 4, 1990, when he was hired as maintenance manager, and continued until his termination in 2007. (Compl. ¶¶ 9, 18)

In 2003, HUD, which provides funding to local public housing agencies pursuant to the terms of an annual contributions contract, determined that the VIHA had failed to comply with HUD regulations governing the financial management of VIHA and thereafter assumed control of the assets, projects and programs of VIHA. (Def. Mot. Ex. 1.) Defendant Valenti was subsequently appointed by the Secretary of HUD to serve as receiver of the VIHA from May 2006 to January 2008. (Def. Mot. Ex. 2.)[1]

On January 19, 2007, defendant Wayne Hood, Assistant Executive Director of VIHA, issued an inter-office memorandum suspending Smith from his employment from January 22, 2007 until February 2, 2007. (Compl. at ¶ 11.) While suspended, Smith filed a grievance for his suspension. (*Id*. at ¶ 12.) A hearing was held on or about February 22, 2007, but Smith did not receive a written response to his appeal within the five days allotted for such responses. (*Id*. at ¶¶ 14-15.) Shortly thereafter, Smith was placed on medical leave by his physician until March 2, 2007. (*Id*. at ¶ 17.) Upon reporting to work on March 2, Smith was served with a Notice of Personnel Action by defendant Michael Hollis, Executive Administrator of VIHA, notifying Smith that he had been terminated from his position. (*Id*. at ¶ 18.)

On February 27, 2009, Smith brought a seven count complaint in this matter alleging the following violations: (1) wrongful termination (count I); (2) violation of his civil rights under 42 U.S.C. § 1983 (count II); (3) breach of contract (count III); (4) bad faith and fair dealing (count IV); (5) violation of his rights under the First Amendment; (count V); (6) intentional and

---

[1] The Court takes judicial notice of two documents filed in support of the defendants' motion: (1) a letter from HUD to VIHA indicating VIHA's noncompliance with the annual contributions contract; and (2) a HUD interoffice memorandum appointing Valenti as receiver. (Def. Mot. Exs 1-2). *See Pension Benefit Guaranty Corp. v. White*, 998 F.2d 1192, 1196-97 (3d Cir.1993) (in deciding a motion to dismiss, a court may consider "matters of public records" and "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

2

negligent infliction of emotional distress (count VI); and (7) punitive damages (count VII). Counts II-VII pertain to Valenti, while counts III-VII pertain to HUD.

HUD and Valenti filed the instant motion to dismiss on May 17, 2010. HUD and Valenti first argue that the Court lacks subject matter jurisdiction to hear Smith's claims because those claims are barred by sovereign immunity. They also contend that Smith has failed to state a cause of action against Valenti under § 1983 because (1) he was acting pursuant to federal, not state law, when the alleged violations first occurred; (2) Smith fails to allege that Valenti personally participated in the alleged violations; and (3) Valenti is entitled to qualified immunity. Alternatively, HUD and Valenti assert that the contractual claims must be dismissed because pursuant to the Tucker Act, the Federal Court of Claims has exclusive jurisdiction over contractual claims against the United States in excess of $10,000. With regard to Smith's tort claims for infliction of emotional distress, HUD and Valenti contend that these claims are barred for failure to comply with the filing requirements of the Federal Tort Claim Act ("FTCA"). Finally, HUD and Valenti contend that punitive damages, included in Count VII, are not properly brought in the complaint.

## II.    Standard of Review

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may move for dismissal on the basis that the Court lacks subject matter jurisdiction to hear a claim. "Challenges to subject matter jurisdiction under Rule 12(b)(1) may be "facial" or "factual." *Turicentro, S.A. v. American Airlines Inc.*, 303 F.3d 293, 300 n.4 (3d Cir. 2002). When considering a facial attack, that is, one that contests the sufficiency of the pleadings, the court accepts the complaint's allegations as true. *Id.* (citing *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 n. 7 (3d Cir.2001)). In contrast, when considering a

3

factual attack, the court "accords plaintiff's allegations no presumption of truth" but instead "weigh[s] the evidence relating to jurisdiction, with discretion to allow affidavits, documents, and even limited evidentiary hearings." *Id*.

An assertion of sovereign immunity constitutes a challenge to the Court's subject matter jurisdiction. *Cudjoe ex rel. Cudjoe v. Department of Veterans Affairs*, 426 F.3d 241, 246 (3d Cir. 2005); *see also White-Squire v. U.S. Postal Service*, 592 F.3d 453, 456 (3d Cir. 2010) (citing *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (the terms of a sovereign's consent to be sued define the court's subject matter jurisdiction)).

To determine which 12(b)(1) standard applies, the Court must look at the specific challenge raised by the Government. *See Cestonaro v. United States,* 211 F.3d 749, 752 (3d Cir. 2000). In this case, HUD and Valenti rest their claim of immunity on the language of the United States Housing Act, 42 U.S.C. § 1437, to argue that the government did not consent to be sued. It is an attack on the sufficiency of the pleadings, and thus, in ruling on the motion, the Court accepts Smith's allegations as true.

Rule 12(b)(6) permits a defendant to move for dismissal on the ground that plaintiff has failed to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In considering such motions, the Court accepts well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in favor of the non-moving party. *United States DOT ex rel. Arnold v. CMC Eng'g*, 564 F.3d 673, 676 (3d Cir. 2009). However, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 n.3 (2007)). Moreover, "a court is not required to accept legal conclusions alleged in the complaint." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir.

2010).  Rather, "[t]he pleading must contain sufficient factual allegations so as to state a facially plausible claim for relief." *Id*.  In deciding a motion to dismiss, "the court may consider documents that are attached to or submitted with the complaint . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Tp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

### III.    Discussion

#### A.  Sovereign Immunity

It is a well-established that the United States, as sovereign, is entitled to immunity from suit unless it consents to be sued.  *White-Squire*, 592 F.3d at 456 (citing *United States v. Mitchell*, 445 U.S. 535, 538 (1980)).  The protection of sovereign immunity extends to agencies of the United States such as HUD.  *United American, Inc. v. N.B.C.-U.S.A. Housing, Inc. Twenty Seven*, 400 F. Supp. 2d 59, 61 (D.D.C. 2005) (citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)).  Additionally, a suit against a federal officer for acts performed within his official capacity amounts to an action against the sovereign.  *Portsmouth Redevelopment and Housing Authority v. Pierce*, 706 F.2d 471, 473-74 (4th Cir. 1983) (citing *Dugan v. Rank*, 372 U.S. 609, 620 (1963)); *see also Christy v. Pennsylvania Turnpike Com'n*, 54 F.3d 1140, 1143 (3d Cir. 1995) ("A suit against an individual in his or her official capacity is no different from a suit against that individual's office"). [2]

---

[2] On the other hand, sovereign immunity is not a bar to suit against a federal officer whose actions are "beyond their statutory powers" or when the officer's authority is "constitutionally void." *Dugan v. Rank*, 372 U.S. 609, 621-622 (1963) (citations omitted).  "In either of such cases the officer's action can be made the basis of a suit for specific relief against the officer as an individual." *Id*. at 622 (internal quotations and citations omitted).  However, such a suit may still fail, as one against the sovereign, "if the relief requested cannot be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign or the disposition of unquestionably sovereign property." *Larson v. Domestic & Foreign Commerce Corp*. 337 U.S. 682, 691 n.11 (1949).

5

"A waiver of sovereign immunity must be express and unambiguous in order to confer federal courts with subject matter jurisdiction." *Cudjoe ex rel. Cudjoe v. Department of Veterans Affairs*, 426 F.3d 241, 246 (3d Cir. 2005). Thus, in the absence of clear congressional consent, there is no jurisdiction to entertain suits against the United States. *Mitchell*, 445 U.S. at 538 (citing *United States v. Sherwood*, 312 U.S 584, 587-588 (1941)). Moreover, "the Government's consent to be sued must be construed strictly in favor of the sovereign . . . and not enlarged beyond what the language requires." *United States v. Nordic Village Inc.*, 503 U.S. 30, 34 (1992) (internal quotations and citations omitted). *See also Cudjoe*, 426 F.3d at 246 (citing *Orff v. United States*, 545 U.S. 596 (2005) ("With respect to its scope, any waiver of sovereign immunity must be strictly construed in favor of the sovereign").

Smith first argues that because he has alleged a § 1983 claim, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(3).[3] However, neither 28 U.S.C. § 1331, or the jurisdictional adjunct to the civil rights statutes, 28 U.S.C. § 1343, embodies a waiver of sovereign immunity as against the United States; nor does nor any provision of the Constitution. *Navy, Marshall & Gordon, P.C. v. U.S. Intern. Development-Cooperation Agency*, 557 F. Supp. 484, 488 (D.C. 1983) (citing *Garcia v. United States*, 666 F.2d 960, 966 (5th Cir.) cert. denied, 459 U.S. 832 (1982); *Jaffee v. United States*, 592 F.2d 712, 715-18 (3d Cir.), cert. denied, 441 U.S. 961 (1979)).

HUD and Valenti assert sovereign immunity pursuant to the United States Housing Act, 42 U.S.C. § 1437, as to all claims asserted by Smith. As stated above, HUD took possession of the VIHA pursuant to its authority under 42 U.S.C. 1437d(j)(3)(A)(iv), which authorizes the

---

[3] In the complaint, Smith alleges that the Court has jurisdiction pursuant to 42 U.S.C. § 1983, 48 U.S.C. § 1561, 28 U.S.C. §§ 1343(3) and 1367(a), the First, Fifth and Fourteenth Amendment of the Constitution and pendent jurisdiction in related state and local claims. (Compl. ¶ 1.)

6

Secretary of HUD to "take possession of all or part of the public housing agency, including all or part of any project or program of the agency" when a public housing agency ("PHA") substantially defaults on a contract with HUD.  The United States Housing Act further provides that

> If the Secretary (or an administrative receiver appointed by the Secretary) takes possession of a public housing agency (including all or part of any project or program of the agency), or if a receiver is appointed by a court, the Secretary or receiver shall be deemed to be acting not in the official capacity of that person or entity, but rather in the capacity of the public housing agency, and *any liability incurred*, regardless of whether the incident giving rise to that liability occurred while the Secretary or receiver was in possession of all or part of the public housing agency (including all or part of any project or program of the agency), *shall be the liability of the public housing agency*.

42 U.S.C. § 1437d(j)(3)(H) (emphasis added).

Defendants argue that § 1437d(j)(3)(H) expressly shields HUD as well as the receiver Valenti from suit because the complaint alleges that Valenti was acting within the course and scope of his duties.  Smith counters that HUD has waived immunity pursuant to 12 U.S.C. § 1702 of the National Housing Act and 42 U.S.C. § 1404a of the United States Housing Act.

### 1.  National Housing Act, 12 U.S.C.  § 1702

Section 1702 provides that

> "[t]he Secretary shall, in carrying out the provisions of this subchapter and subchapters II, III, V, VI, VII, VIII, IX-B, and X of this chapter, be authorized, in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal."

12 U.S.C. § 1702.

The Court first notes that by its own terms, § 1702's applicability is limited to the actions of the Secretary in "carrying out the provisions of this subchapter and subchapters II, III, V, VI, VII, VIII, IX-B, and X of [Chapter 13, the National Housing Act]."  The above-enumerated subsections generally relate to actions involving housing renovation and mortgage insurance.

7

As noted above, waivers of immunity are narrowly construed in favor of the sovereign. *Cudjoe*, 426 F.3d at 246. Applying this principle to a federal agency such as HUD, courts have determined that a "sue and be sued" provision that is addressed to actions undertaken pursuant to specifically identified statutes, is inapplicable to conduct that does not fall within those parameters. *See, e.g., United American, Inc. v. N.B.C.-U.S.A. Housing, Inc. Twenty Seven*, 400 F. Supp. 2d 59, 62-63 (D.D.C. 2005) (holding that the "sue and be sued" provision of § 1702 did not apply to 12 U.S.C. § 1702q because it was not included in the chapters specifically enumerated in § 1702); *United States v. Adams*, 634 F.2d 1261, 1264-65 (10th Cir. 1980) (waiver in 1404a did not apply for payment of damages for alleged contractual breaches arising out of an approved contract because such actions did not fall within the "functions" of HUD in making housing available under the United States Housing Act).[4]

In the instant matter, the complaint does not recite any facts that indicate that HUD took any action pursuant to the subchapters enumerated in § 1702. Thus, the Court concludes that § 1702 does not waive HUD's immunity with respect to the claims asserted by Smith.

### 2. United States Housing Act, 42 U.S.C. §§ 1404a and 1437d(j)(3)(H)

Section 1404a provides:

> [t]he Secretary of Housing and Urban Development may sue and be sued only with respect to its functions under the United States Housing Act of 1937, as amended [42 U.S.C.A. § 1437 et seq.], and title II of Public Law 671, Seventy-sixth Congress, approved June 28, 1940, as amended [42 U.S.C.A. § 1501 et seq.]."

---

[4] On the other hand, the Supreme Court in *FHA v. Burr*, 309 U.S. 242 (1940), "liberally" construed the waiver provision of § 1702, and stated that "when Congress launched a governmental agency into the commercial world and endowed it with authority to 'sue or be sued', that agency is not less amenable to judicial process than a private enterprise under like circumstances would be." *Burr*, 309 U.S. at 245. Despite this liberal reading of § 1702, the Supreme Court effectively limited the ability to recover money damages from HUD by holding that "only those funds which have been paid over to the Federal Housing Administration in accordance with [§ 1702] and which are in its possession, severed from Treasury funds and Treasury control, are subject to execution." *Id*. at 250. Here, even if § 1702 is given a more liberal construction, the assertion of immunity in § 1437d(j)(3)(H), as discussed below, would limit § 1702's applicability in the instant matter.

8

42 U.S.C. 1404a.

As stated above, § 1404a waives immunity with respect to the Secretary's functions under 42 U.S.C. § 1437 et seq. However, 1437d(j)(3)(H) specifically asserts HUD's immunity for actions taken while in possession of a public housing agency.[5] Thus, the Court is faced with an apparent conflict between two subsections of the same statute: § 1404a, which waives immunity, and 1437d(j)(3)(H), which asserts it.[6]

Following the precept that a statute must be construed "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void, or insignificant," *ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513, 516 (3d Cir. 1998), the Court concludes that 1437d(j)(3)(H) constitutes a carve out of the general waiver of immunity provided under § 1404a. To hold that 1437d(j)(3)(H) is a waiver of immunity, as Smith contends, would render 1437d(j)(3)(H) superfluous, since it would merely reiterate the broad waiver of immunity under 1404a.[7]

---

[5] Smith contends that § 1437d(j)(3)(H) actually subjects HUD to suit when it takes possession of a public housing agency. Smith argues that § 1437d(j)(3)(H) places HUD and the receiver in the "shoes" of VIHA because, pursuant to the statute, in taking possession of a PHA, HUD is "deemed to be acting . . . in the capacity of the public housing agency," and thus HUD also assumes the liability of the public housing agency. Looking to the "plain meaning" of the words of § 1437d(j)(3)(H), the Court finds Smith's contention that this subsection assigns the liability of a PHA, including its liability, to HUD to be untenable. The statute says that "any liability" incurred by the Secretary or appointed receiver "regardless of whether the incident giving rise to that liability occurred while the Secretary or receiver was in possession of all or part of the public housing agency . . . shall be the liability of the public housing agency," not the liability of HUD.

[6] HUD asserted a similar defense in a case before a district court in Louisiana, *Jomokenyatta-Bean v. Housing Authority of New Orleans,* WL 3193773, at *2-3 (E.D. La. 2006). In *Jomokenyatta*, plaintiffs brought an action against the Housing Authority of New Orleans and HUD to recover unpaid wages. Similar to the situation in this matter, HUD had assumed control of the local housing authority. *Id*. at *2. HUD also asserted that § 1404a did not provide a waiver to HUD's immunity when it took possession of a public housing agency, and that pursuant to § 1437d(j)(3)(H), the liability could only be attributed to the public housing agency. However, the plaintiffs in that case brought their claim under the Fair Labor Standards Act ("FLSA"), which courts have interpreted as permitting actions against the United States by its employees. *Id*. at *3. In that case, the court held that because the plaintiffs were not employees of HUD but rather of the state, the limited waiver of sovereign immunity under the FLSA did not apply. *Id*. Thus, the court did not reach the issue of whether and to what extent § 1437d(j)(3)(H) precluded HUD's liability.

[7] The legislative history of these statutes supports such a reading. Section 1404a, enacted in 1948, pre-dates § 1437d(j)(3)(H), which was enacted in 1998 as part of a fairly substantial amendment to the United States Housing Act. Prior to the 1998 amendment, entitled "Expansion of Powers for Dealing with Public Housing Agencies in

9

In this case, the facts alleged in the complaint, indicate that the asserted violations occurred while HUD was acting pursuant to its powers to assume control of VIHA. Thus, the Court concludes that the immunity provided for in 1437d(j)(3)(H) applies and HUD and Valenti, acting in his official capacity, are immune from suit.[8] However, Smith has also sued Valenti in his individual capacity for violations of his civil rights under Title 42 U.S.C. § 1983.[9] A suit brought against a federal official acting individually is not protected by the doctrine of sovereign immunity. *Dugan*, 372 U.S. at 622.[10] Thus, the Court will consider whether Smith's § 1983 claims sustainable pursuant to Rule 12(b)(6).

---

Substantial Default," § 1437d(j)(3)(B)-(D) merely provided for the appointment of a receiver in order to remedy a substantial deterioration in living conditions in public housing developments. However, following the 1998 amendment, the receiver's powers were significantly expanded to permit the receiver to, for example, abrogate contracts which substantially impede correction of the substantial default, or to dispose of the housing agency assets. Moreover, the 1998 amendment also specifically provided that the receiver was not bound by state or local law relating to the management of finances and personnel if it was determined that the application of those laws impeded correction. 42 U.S.C. § 1437(d)(j)(3)(B-D). As already noted, this amendment also provided that any liability for actions taken by the Secretary or receiver on behalf of the housing agency would be attributed to the PHA and not the Secretary or receiver. 42 U.S.C. § 1437d(j)(3)(H). Although the Court could not locate any statement of intent by Congress, it is not unreasonable to infer that Congress, realizing that HUD's increased authority to operate PHAs would expose the agency to greater liability, wished to reign in the cost of such exposure and thus enacted the provision asserting HUD's immunity to suit in those circumstances.

[8]Relief in certain circumstances may be available against a federal agency pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq., without recourse to a waiver of immunity under either of the Housing Acts. *See, e.g., Selden Apartments v. U.S. Dept. of Housing and Urban Development*, 785 F.2d 152, 157-158 (6th Cir. 1986) ("Civil rights actions against HUD seeking declaratory relief or injunctions generally have been brought without analysis of § 1702 or sovereign immunity . . . since the review provisions of the Administrative Procedure Act are made applicable to agency action taken pursuant to civil rights laws by 42 U.S.C. § 2000d-2"). The Administrative Procedure Act ("APA") waives sovereign immunity for a federal agency when there is "no other adequate remedy in a court" and "when the relief sought is 'other than money damages.'" *Zellous v. Broadhead Associates*, 906 F.2d 94, 99 (3d Cir. 1990) (quoting 5 U.S.C. § 702)). However, in this case, Smith has not relied on the APA, and he seeks damages. Thus, the Court need not reach the issue of the impact of 1437d(j)(3)(H) on the applicability of the APA.

[9]In the complaint, Smith explicitly alleges in count II that Valenti, in his individual capacity, violated Title 42 U.S.C. § 1983. (Compl. ¶ 23.)

[10] The Third Circuit has held that while sovereign immunity barred a § 1983 suit for money damages against state officials acting in their official capacity (since such a suit was against the state inasmuch as plaintiff seeks monetary damages from the state's treasury), a suit against state officials in their personal capacity was permitted, since in that case, the plaintiff seeks recovery from the personal assets of the individual, not the state. *Melo v. Hafer*, 912 F.2d 628, 635 (1990) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Applying that reasoning to the analogous situation involving a federal official, the Court finds that Valenti is not shielded by sovereign immunity where he has been sued in his personal capacity, as he has for purposes of the § 1983 claim.

**B. § 1983**

In count II, Smith asserts that Valenti and co-defendants Hollis and Woods conspired to deprive him of equal protection and due process with respect to his right to contract and to equal employment. (Compl. ¶¶ 24-25.)

Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.

Section 1983 does not provide for liability against federal agencies acting under color of federal law. *Ponton v. AFSCME*, 2010 WL 3705996, at *2 (3d Cir. 2010) (citing *Brown v. Philip Morris, Inc*., 250 F.3d 789, 800 (3d Cir.2001)). Thus, "federal agencies and officers are facially exempt from section 1983 liability inasmuch as in the normal course of events they act pursuant to federal law." *Hindes v. F.D.I.C*., 137 F.3d 148, 158 (3d Cir.1998) (citing *District of Columbia v. Carter*, 409 U.S. 418, 425 (1973)). However, "federal employees who conspire with state officials to violate someone's constitutional rights are treated as acting under color of state law." *Melo v. Hafer*, 912 F.2d 628, 638 (3d Cir. 1990).[11]

First, the Court notes that it is uncertain that the named officials, Hood and Hollis, were territorial officers acting pursuant to local law because, according to Smith, Hood and Hollis were administrators of VIHA appointed by HUD. The failure to establish that any of the "conspirators" were state actors acting pursuant to state law would be a basis to dismiss the §

---

[11] Section 1983 claims are also cognizable against a federal official against pursuant to territorial laws. *See Anderson v. Government of the Virgin Islands*, 199 F. Supp.2d 269, 274 -75 (D.V.I. 2002).

1983 action. However, assuming arguendo that they were, Smith still has failed to state a cause of action because he has not alleged any specific action by Valenti that violated his constitutional rights. Instead, Smith, in his opposition, urges the Court to infer that Valenti, by virtue of having been appointed the sole Board member of the VIHA, acted in "close concert" to make hiring and firing decisions with the Executive Director and other officials. (Opp. at 10.) However, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Such involvement "can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Id*. "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Id*. A complaint adequately shows personal involvement "where it states the conduct, time, place, and persons responsible." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citing *Boykins v. Ambridge Area Sch. Dist*., 621 F.2d 75, 80 (3d Cir.1980)).

In his complaint, Smith alleges the dates on which certain individuals acted to terminate his employment: he alleges that defendant Hood suspended him from his employment on Janurary 19, 2007 and that defendant Hollis executed the NOPA that terminated Smith's employment with VIHA on March 2, 2007. (Compl. ¶¶ 11, 18.) However, Smith does not allege that Valenti personally directed such actions, or had actual knowledge of the actions or acquiesced with those actions. In fact, Smith does not allege a single action taken by Valenti with respect to Smith's termination. Moreover, Smith does not assert that Hollis or Hood had to receive Valenti's authorization in order to terminate an employee; instead, he contends that it was Valenti who had to report to Hollis and Hood. (Opp. at 10.)

While a plaintiff is entitled to have all reasonable inferences drawn in his favor on a motion to dismiss, the facts alleged in the complaint "must be enough to raise a right to relief

12

above the speculative level." *Phillips*, 515 F.3d at 232. In this case, Smith fails to allege facts upon which to rest the inference that Valenti acted in concert with state officials to deprive him of his constitutional rights. Accordingly, Smith's § 1983 action against Valenti must be dismissed.

### C. First Amendment Claim

In count V, Smith alleges that "Defendants, including but not limited to Defendant Wayne Hollis" retaliated against Smith for cooperating with visiting officials who were inspecting housing communities managed by Defendant VIHA. (Compl. ¶ 33.) Smith further alleges that such actions constitute a violation of his First Amendment right to freedom of speech. (Compl. ¶ 34.) In Smith's opposition, he asserts that his First Amendment right is actionable under § 1983. However, as discussed above, Smith has failed to allege a § 1983 action against Valenti.

Inasmuch as Smith's First Amendment claim can be construed as a *Bivens*' claim, the Court finds that Smith has failed to state a cause of action against Valenti and HUD. *In Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court authorized suits against federal officials whose actions violate an individual's constitutional rights. As the Third Circuit has observed, "*Bivens* actions are simply the federal counterpart to § 1983 claims brought against state officials." *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004); *see also McCloskey v. Mueller*, 446 F.3d 262, 271-72 (1st Cir. 2006) ("The *Bivens* doctrine allows constitutional claims against federal officials, in their individual capacities, for actions taken under color of federal law").[12] First of all, the claims against HUD must be dismissed because a Bivens claim cannot be sustained against a

---

[12] Smith does not assert the First Amendment claim specifically against Valenti in his individual capacity. The Court also construes the pleading in favor of Smith and assumes that the claims are brought against him as an individual rather than a federal official for purposes of this Bivens' analysis.

13

federal agency. *Ponton*, 2010 WL 3705996, at *2 (citing *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 486 (1994).

Additionally, with regard to Valenti, a *Bivens* claim cannot be sustained on the basis of vicarious liability. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948 (2009). Rather, a plaintiff must plead that each defendant, "through the official's own individual actions, has violated the Constitution." *Id*. "Where the claim is invidious discrimination in contravention of the [First Amendment] . . . the plaintiff must plead and prove that the defendant acted with discriminatory purpose. *Id*. (citing *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 540-541 (1993)). In order to sustain a *Bivens* claim, the plaintiff must do "more than [offer] a "formulaic recitation of the elements" of a constitutional claim. *Id*. at 1951. Such allegations are "conclusory and not entitled to be assumed true." *Id*. (citing *Twombly*, 550 U.S., at 554-555). Moreover, "allegations that are 'merely consistent with' liability are insufficient to 'state a claim for relief that is plausible on its face' in a Bivens action." *Laffey v. Plousis*, 364 Fed. Appx. 791, 794 (3d Cir. 2010) (quoting *Iqbal*, 129 S.Ct. at 1949).

Here, Smith's allegations that he was fired in retaliation for cooperating with visiting officials is "merely consistent" with liability of the defendants. Smith cites no factual basis to indicate the nature of his cooperation or any actions or words by defendant Valenti that show that he acted with discriminatory intent, much less that he participated at all in the decision to terminate Smith. The Court concludes that count V must also be dismissed as to Valenti for failure to state a legal claim.

### IV.     Conclusion

Pursuant to § 1437d(j)(3)(H), HUD and the receiver Valenti, in his official capacity, are immune from suit for actions taken when assuming control of the VIHA.  Thus, the Court lacks subject matter jurisdiction to entertain counts III, IV, and VI.  In addition, Smith has failed to allege specific conduct that supports the assertion that Valenti, in his individual capacity, violated Smith's rights under counts II and V and thus these claims are dismissed for failure to state a claim. The Court also lacks subject matter jurisdiction with regard to the count V as applied to HUD.  Count VII, asserting punitive damages, is inappropriate as a separate count. *McDonald v. Davis*, 2009 U.S. Dist. LEXIS 17309, at *55-56 (D.V.I. 2009).  Accordingly, HUD and Valenti's motion to dismiss will be GRANTED.  An appropriate order will follow.

**ENTER**:

Dated: January 28, 2011         _____/s/_____
                                RAYMOND L. FINCH
                                U.S. DISTRICT JUDGE