DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| **DENNIS W. SMITH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 2009-0011 |
| ) | |
| **VIRGIN ISLANDS HOUSING AUTHORITY,** ) | |
| **VI HOUSING AUTHORITY BOARD,** ) | |
| **WAYNE HOOD, as Director of Housing** ) | |
| **Operation at VIHA and Individually,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**Attorneys:**
**Natalie Nelson Tang How, Esq.,**
St. Croix, U.S.V.I.
    *For Plaintiff*

**Wayne Hood,** *Pro Se*
Lithia Springs, GA

**Sharmane Davis-Brathwaite, Esq.,**
**Julita K. De Leon, Esq.,**
St. Thomas, U.S.V.I.
    *For Defendants Virgin Islands Housing Authority*
    *and VI Housing Authority Board*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

    THIS MATTER comes before the Court on the Motion to Dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), filed by Defendant Wayne Hood ("Hood"). (Dkt. No. 63). Plaintiff Dennis W. Smith ("Plaintiff" or "Smith") has opposed the Motion. (Dkt. No. 69). For the reasons that follow, the Court will grant Hood's Motion to Dismiss, with prejudice.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Smith was hired by Defendant Virgin Islands Housing Authority ("VIHA") in June 1990 as a Maintenance Manager, and was terminated in March 2007. (Dkt. No. 60, ¶¶ 6, 16). On February 27, 2009, Smith brought a seven-count complaint alleging wrongful termination; "Violation of Civil Rights Act" pursuant to 42 U.S.C. § 1983 (equal protection and due process claims); breach of contract; "bad faith and unfair dealing"; violation of his rights under the First Amendment; intentional and negligent infliction of emotional distress; and punitive damages. (Dkt. No. 1). Smith sued VIHA; the VIHA Board; Hood, as Director of Housing Operations at VIHA, in his official and individual capacities; VIHA Executive Director Michael Hollis; HUD Receiver and Chairman of the VIHA Board Carmen Valenti; and the United States Department of Housing & Urban Development ("HUD"). On May 17, 2010, Defendants Valenti and HUD filed a motion to dismiss, which the Court granted on January 28, 2011. (Dkt. Nos. 48, 49).

Defendant Hood filed his first motion to dismiss on June 2, 2010, which the Court granted, without prejudice, on February 28, 2011 (the "February 2011 Opinion"). (Dkt. Nos. 50, 51). The Court found, with regard to Smith's equal protection claim, that Smith did not "provide sufficient factual allegations in support of that claim. He has not stated any facts indicating that his termination was related to a discriminatory purpose or explained how he was treated differently from others who were similarly situated." (Dkt. No. 51 at 8). Regarding Smith's due process claim, the Court first found that Smith had a property interest in his job as a result of an implied contract with VIHA pursuant to the terms of the employment manual. *Id.* at 9-10. However, the Court found that Smith had not alleged sufficient facts to show that he was denied due process or that Hood was complicit in that denial. *Id.* at 10-11. The Court further ruled that Smith's breach of contract claim suffered from a "critical flaw" because it did not allege that he had a contractual agreement,

implied or other otherwise, with Hood, but only with VIHA, and therefore that claim failed as a matter of law. *Id.* at 13-14. Finally, the Court dismissed Smith's punitive damages claim, finding that such damages did not constitute an "actionable claim." *Id.* at 15-16.[1]

On April 5, 2011, Plaintiff filed an Amended Complaint against VIHA, the VIHA Board, and Hood, officially and individually. (Dkt. No. 60).[2] The Amended Complaint provides that, in June 1990, Smith was hired by VIHA "in the non exempt [ ] position of Maintenance Manager" and worked in that position until his termination in March 2007. *Id.*, ¶¶ 6, 16. Smith alleges that his employment was uneventful, with no performance issues or disciplinary action, until early 2007. *Id.*, ¶ 7. At that time, HUD placed VIHA in receivership and appointed Hood to supervise VIHA's daily operations. *Id.* ¶ 8. The Amended Complaint describes VIHA as a "semi-autonomous body politic and an agency of the Government of the Virgin Islands," *id.*, ¶ 3, and the VIHA Board as "the governing body of the Virgin Islands Housing Authority with oversight authority for personnel matter[s] including hiring and firing of employees and making decision[s] for the day to day operations of VIHA." *Id.*, ¶ 4.

Smith further alleges that, on or about January 19, 2007, Hood, as his "immediate supervisor," issued an inter-office memorandum suspending him from employment from January 22, 2007 to February 2, 2007. According to Smith, the memorandum "wrongfully blame[d] Plaintiff for the housing deficiencies that w[ere] cited by Federal officials during [their] visit to Defendant VIHA and its designated housing facilities locally." *Id.*, ¶ 9. Plaintiff filed a grievance on January 23, 2007. *Id.*, ¶ 10. The Amended Complaint states that, on February 8, 2007, "a

---

[1] The Court also dismissed Smith's § 1983 First Amendment, breach of the implied contract of good faith and fair dealing, and intentional and negligent infliction of emotional distress claims, which were not reasserted in his Amended Complaint. (Dkt. No. 51).

[2] The Amended Complaint dropped the remaining defendant in the original Complaint, VIHA Executive Director Michael Hollis.

3

preliminary grievance hearing was scheduled, but the hearing was rescheduled to a later date by defendants VIHA and VIHA Board as Plaintiff never had an opportunity to be heard." *Id.*, ¶ 11.

On February 22, 2007, Defendants "continued the hearing," at which time Smith met with Hood and other members of VIHA management. *Id.*, ¶ 12. "[D]issatisfied with the results," Smith "sought to take action at the next level by appealing," as provided in VIHA's personnel policies and procedures manual "which established the terms of the contractual relationship between the parties." *Id.* Plaintiff alleged that, pursuant to those policies and procedures, he should have received a written response to his appeal within five working days after the February 22, 2007 hearing, but he did not. *Id.*, ¶ 13.

Shortly thereafter, due to being "physically and mentally affected by Defendants['] denial of his due process rights and the opportunity to be heard," Smith's treating physician placed him on medical leave. *Id.,* ¶ 15. When he returned to work on March 2, 2007, he was served with a Notice of Personnel Action, executed by VIHA's Executive Director Michael Hollis, upon the recommendation of Hood, notifying him that he had been terminated from his position based on "unfounded allegations of negligence and wrongdoing made by Defendant Wayne Hood against Plaintiff." *Id.*, ¶ 16.

The Amended Complaint contains four causes of action. In the first Count, entitled "Violation of Due Process Rights," Smith alleges that Defendants did not follow personnel rules and regulations related to grievance procedures that were set forth in VIHA's manual when they terminated him. The cause of action specifically mentions that Smith was denied an "opportunity to be heard." *Id.,* ¶ 18. In Count II, entitled "Violation of Civil Rights Act," Smith alleges that Defendants "conspired to deprive plaintiff of equal protection and due process with respect to his rights as an employee of Defendant VIHA" and that, as a result of Defendants' "unlawful actions,"

his right to due process was "impeded thereby preventing the due course of justice." *Id.*, ¶¶ 21, 22. Count III, Breach of Contract, asserts that Defendants' conduct "constitute[s] a breach of Plaintiff's employment contract, both express and implied and a violation of the terms and conditions of plaintiff's property interest in his employment as set forth in Defendant VIHA's policies and procedures manual." *Id.*, ¶ 24. Plaintiff's final cause of action, Punitive Damages, asserts that Defendants' actions "were so extreme and outrageous and done with such reckless disregard to the rights and interests of Plaintiff as to entitle Plaintiff to punitive damages." *Id.*, ¶ 27.

Defendant Hood responded by filing a second Motion to Dismiss (Dkt. No. 63), which Smith opposed. (Dkt. No. 69).

## II. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) calls for dismissal of a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "'In deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiff[], and all inferences must be drawn in favor of [him].'" *Shahin v. PNC Bank*, 625 F. App'x 68, 70 (3d Cir. 2015) (quoting *McTernan v. City of New York*, 577 F.3d 521, 526 (3d Cir. 2009) (internal quotation marks omitted)). To withstand a motion to dismiss for failure to state a claim, "a complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id. (*quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). As the Third Circuit has ruled:

> A complaint satisfies the plausibility standard when the factual pleadings allow[] the court to draw the reasonable inference that the defendant is liable for the

> misconduct alleged. This standard requires showing more than a sheer possibility that a defendant has acted unlawfully. A complaint which pleads facts merely consistent with a defendant's liability stops short of the line between possibility and plausibility of entitlement of relief.

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (internal quotation marks and citations omitted).[3] In this regard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to defeat a Rule 12(b)(6) motion to dismiss. *Emrit v. Indep. Music Awards, IMA*, 605 F. App'x 103, 104 (3d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

When considering whether dismissal is appropriate, a court must: (1) "tak[e] note of the elements a plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) where there are "well-pleaded factual allegations, . . . assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (internal quotation marks omitted).

### B. Analysis

The factual allegations in the Amended Complaint that relate specifically to Hood—Smith's immediate supervisor—are that he: (1) issued an interoffice memorandum suspending

---

[3] Contrary to Smith's contention, the governing legal standard for Rule 12(b)(6) motions to dismiss is not "whether Mr. Smith can prove any set of facts consistent with his allegations that will entitle him to relief[.]" (Dkt. No. 69 at 2). That *had* been the pleading standard since 1957, when the Supreme Court decided *Conley v. Gibson*, 355 U.S. 41 (1957). However, fifty years later, in *Twombly*, 550 U.S. 544, the Supreme Court "disavowed. . . the 'no set of facts' language from *Conley*," making it clear that such language "may no longer be used as part of the Rule 12(b)(6) standard." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). The Court in *Phillips* observed that the "no set of facts" language "'is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.'" *Id.* (quoting *Twombly*, 550 U.S. at 563).

6

Plaintiff for two weeks; (2) was "the mastermind behind the concerted plan to wrongfully blame Plaintiff for the housing deficiencies that [were] cited by Federal officials during [their] visit to Defendant VIHA"; (3) attended the continued February 22, 2007 grievance hearing; (4) recommended to VIHA's Assistant Executive Administrator, based on "unfounded allegations of negligence and wrongdoing," that Smith be terminated; and (5) maligned Smith after he was served with the notice of personnel action regarding his termination. (Dkt. No. 60, ¶¶ 9, 12, 16).

1. **Counts I and II -- The Due Process Claims**

Count I of the Amended Complaint alleges a due process violation under the Fifth and Fourteenth Amendments of the United States Constitution.[4] Count II alleges a due process violation under the "Civil Rights Act," which this Court construes as a statutory due process claim under 42 U.S.C. § 1983.[5] The Court will address Hood's motion to dismiss Smith's due process claims together, as the allegations underlying the claims appear to be similar: that Defendants did not follow certain required procedures when terminating him.

---

[4] Smith's Fifth Amendment due process claim will be dismissed because it is inapplicable to state and territorial actors. Because of its inapplicability, Smith "cannot satisfy one of the essential elements of his Fifth Amendment due process claim[] and, therefore, has failed to state a claim upon which relief can be granted." *Martinez v. Francois*, 2015 WL 1283371, at *7 (D.V.I. Mar. 17, 2015) (citing *Bergdoll v. City of New York*, 515 F. App'x 165, 170 (3d Cir. 2013) (affirming dismissal of claims brought under the Due Process Clause of the Fifth Amendment against state officials).

[5] The Court construes Count II, entitled "Violation under the Civil Rights Act," as asserting a claim under 42 U.S.C. § 1983, although the statute is not mentioned in that cause of action. In Plaintiff's original Complaint, he specifically cited § 1983 as a basis for his similarly-entitled "Violation under the Civil Rights Act" claim. (Dkt. No. 1, p. 5). In addition, the "Venue and Jurisdiction" section of the Amended Complaint references 42 U.S.C. § 1983.

The Fourteenth Amendment of the Constitution forbids a state from depriving persons of life, liberty or property without due process of law. U.S. Const. amend. XIV, § 1.[6] "Due process requires that 'an individual be given an opportunity for a hearing before he is deprived of any significant property interest.'" *George v. Plaskett*, 232 F. Supp. 2d 486, 489 (D.V.I. 2002) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)).[7] In order to state a claim for a procedural due process violation under the Constitution, a plaintiff must allege: "(1) an asserted individual interest encompassed within the Fourteenth Amendment's protection of 'life liberty, or property,' and (2) that the procedures available denied him or her of 'due process of law.'" *Id.* (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

To state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege: (1) that the conduct complained of was committed by a person acting under color of state or territorial law; and (2) that this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Lepre v. Lukus*, 602 F. App'x 864,

---

[6] The Due Process Clause of the Fourteenth Amendment is applicable to the Virgin Islands pursuant to section 3 of the Revised Organic Act, 48 U.S.C. § 1561. *Rivera-Moreno v. Gov't of the V.I.*, 2014 WL 4805675, at *16 n.11 (V.I. Sept. 26, 2014).

[7] In its February 2011 Opinion, the Court found that Smith set forth facts "sufficient to demonstrate a property interest in his employment with VIHA" based on an implied contract that provided the requisite procedural protections. (Dkt. No. 51 at 10). In his Amended Complaint, Smith included additional allegations to support a conclusion that he alleged a property interest in his employment—*i.e.*, that his position was "non exempt" and that he was a "regular government employee." (Dkt. No. 60, ¶ 6). The Court need not review the conclusion set forth in the February 2011 Opinion that Smith had an implied contract with VIHA and therefore had a property interest in his job, or analyze whether the new allegations in the Amended Complaint allege a property interest because, even assuming he had such an interest, his due process claims fail on the ground that he did not plead facts showing Hood's personal involvement in the alleged constitutional deprivation.

869-70 (3d Cir. 2015).[8] To state a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must allege: "(1) a deprivation of a protectable liberty or property interest and (2) that the procedures available did not provide due process of law." *Arneault v. O'Toole*, 864 F. Supp. 2d 361, 395 (W.D. Pa. 2012) (citing *Pence v. Mayor & Tp. Comm. of Bernards Tp.,* 453 F. App'x 164, 166-67 (3d Cir. 2011)).

In Count I, Smith alleges:

Defendants violated their own Personnel Rules and Regulations by terminating Plaintiff's employment in violation of the grievance procedures set forth in VIHA's policy and procedure manual and denied Plaintiff his due process rights and the opportunity to be heard pursuant to the Fifth and Fourteenth Amendment[s].

(Dkt. No. 60, ¶ 18). Count II—the cause of action under 42 U.S.C. § 1983—asserts that Defendants "conspired to deprive plaintiff of . . . due process with respect to his rights as an employee of Defendant VIHA," and that VIHA and the VIHA Board's "unlawful actions" impeded Smith's right to due process, "thereby preventing the due course of justice." *Id.* ¶¶ 21, 22.

Hood argues that it is unclear from Plaintiff's recitation of the facts what review Plaintiff was denied and in what manner Hood conspired with VIHA and the Board to bring about a deprivation of Smith's due process rights. (Dkt. No. 63 at 5). Smith does not respond to this argument. Instead, he recharacterizes Hood's position as improperly placing an "impossible

---

[8] Smith sued Hood in both his official and individual capacities. It is well-settled that the Eleventh Amendment bars suits for monetary damages against state officials sued in their official capacities pursuant to 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990). Similarly, officers and employees of a territory, such as the Virgin Islands, acting in their official capacities, may not be made defendants in a Section 1983 action. *Eddy v. V.I. Water & Power Auth.*, 955 F. Supp. 468, 476 (D.V.I. 1997). Thus, Smith's § 1983 claims against Hood in his official capacity must be dismissed.

burden" of proving the allegations he makes in his Amended Complaint, claiming that such a showing is not required at this stage of the proceedings. (Dkt. 69 at 4-5).[9]

Assuming that the alleged due process violations in Counts I and II pertain to both Smith's suspension and his termination, the Court finds that Plaintiff's allegations are insufficient to state a claim.[10] In Counts I and II, Smith claims that he was denied due process when Defendants violated the grievance procedures set forth in their personnel manual and conspired to deprive him of due process with regard to his rights as a VIHA employee. (Dkt. No. 60, ¶¶ 18, 21). However, Smith fails to allege what role Hood played in Defendants' alleged violation of the "grievance procedures set forth in VIHA's policy and procedure manual" and in the alleged "depriv[ation] . . . of . . . [Smith's] equal protection and due process . . . rights as an employee of Defendant VIHA." *Id.*, ¶¶ 18, 21. Nor does Smith allege how Hood was otherwise complicit in depriving Smith of his due process rights.

In view of the allegations against Hood, as set forth above, it is clear that the Amended Complaint contains no allegation that describes any involvement by Hood in violating Smith's due process rights. Rather, the factual background in the Amended Complaint points to Defendants VIHA and VIHA Board for allegedly "violat[ing their] own policies and procedures by failing to

---

[9] Once again, Plaintiff apparently hearkens back to the pre-*Twombly* pleading era. As indicated in footnote 3, *supra,* Smith misapprehends the sea change wrought by *Twombly*, 550 U.S. 544 and *Iqbal*, 556 U.S. 662 when courts assess motions to dismiss. As the Third Circuit has commented, "[P]leading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading [following *Twombly* and *Iqbal*], requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[10] While the factual section of the Amended Complaint includes allegations regarding the policies and procedures followed when Smith challenged his suspension, Count I asserts a violation of due process associated with his termination. For purposes of this Opinion, the Court assumes that the suspension and termination are intertwined.

respond to and depriving [Smith] of his due process rights and opportunity to be heard." *Id.* ¶ 14. That Plaintiff chooses to lump together, conclusorily, all Defendants in asserting his causes of action for violation of his due process rights in Counts I and II does not negate the fact that Plaintiff's Amended Complaint is devoid of any allegations that describe the nature of Hood's involvement in the alleged due process violation or in any conspiracy to deprive Plaintiff of such rights.

To the extent that Smith's procedural due process violations concern the denial of an "opportunity to be heard," (Dkt. No. 60, ¶¶ 11, 14, 18), this conclusory allegation without any factual underpinning fails to state a claim. As the Third Circuit explained in *Phillips, Twombly* instructed that "a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8"—requiring "a 'showing' rather than a blanket assertion of an entitlement to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). After *Twombly*, "it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" *Id.* at 233 (quoting *Twombly*, 550 U.S. at 563 n.8). Here, a blanket assertion of being denied an opportunity to be heard fails to provide enough factual support to give Hood notice of what hearing Smith was due, what was denied, and Hood's alleged involvement in such denial. This is particularly so where the Amended Complaint contains allegations that Smith *did* attend a hearing regarding his suspension, and appealed the result, which indicates that he *did* receive some due process. (Dkt. No. 60, ¶ 12).

To the extent that Smith's alleged due process violations relate to his allegation that Smith "should have received a written response to his appeal within five (5) working days after the hearing," pursuant to VIHA's policies and procedures, this claim also fails. *Id.* ¶ 13. Once again,

the Amended Complaint does not contain any allegations of Hood's role in the apparent failure to provide Smith with a written response. Moreover, the Court cannot discern from the allegations how the alleged failure to receive a written response within five days adversely affected Smith, or how that failure had due process constitutional implications. *Id.*

In order to state a due process claim against an individual government defendant under both 42 U.S.C. § 1983 and the Fourteenth Amendment to the Constitution, a plaintiff must allege that the individual was personally involved in the misconduct. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (stating that an individual government defendant "'in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'") (quoting *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988)); *Toussaint v. Good*, 276 F. App'x 122, 124-25 (3d Cir. 2008) (holding that, to the extent a plaintiff's claims against individual government defendants were based on a respondeat superior liability theory and did not allege any specific personal involvement by those defendants in the alleged due process deprivations under the Fourteenth Amendment, those claims would fail). Smith has alleged no such involvement by Hood. As a result, Smith has failed to state a procedural due process claim against Hood in either Count I or Count II.

In sum, Smith did not seize the opportunity in his Amended Complaint to cure the deficiencies in his due process allegations against Hood that the Court identified in its February 2011 Opinion. That Opinion cited Smith's failure to plead facts implicating Hood. In that regard, the Court noted, *inter alia*, that Smith did not indicate "what role, if any Hood played in denying Smith a written response to his appeal . . . ." (Dkt. No. 51 at 11-12) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 134 (3d Cir. 2010) (granting motion to dismiss against police supervisor where plaintiffs failed to allege facts showing personal involvement in alleged violations of underlings)).

Without such personal involvement, the Court found the due process claim could not stand. *Id*. at 12. That same failure to allege personal involvement by Hood in the alleged due process violations also infects the Amended Complaint.

For the reasons stated above, the Court will dismiss the due process claims against Defendant Hood, set forth in Count I and Count II, for failure to state a claim.

### 2. Count II – The Equal Protection Claim

In addition to the due process claim, Plaintiff's second cause of action asserts that Defendants "conspired to deprive plaintiff of equal protection . . . with respect to his rights as an employee of Defendant VIHA." (Dkt. No. 60, ¶ 21). Under the Fourteenth Amendment, no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination." *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990) (citing *Batson v. Kentucky*, 476 U.S. 79, 93 (1986)); *see also Lande v. City of Bethlehem*, 457 F. App'x 188, 192 (3d Cir. 2012) ("To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against him because of his membership in a protected class."); *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005) (same). The plaintiff must "demonstrate that [he] 'receiv[ed] different treatment from that received by other individuals similarly situated.'" *Andrews,* 895 F.2d at 1478 (quoting *Kuhar v. Greensburg-Salem Sch. Dist.*, 616 F.2d 676, 677 n.1 (3d Cir. 1980)); *see also Kasper v. Cnty. of Bucks*, 514 F. App'x 210, 214 (3d Cir. 2013) ("In order to establish a § 1983 equal protection claim . . . , [plaintiff] must demonstrate that she received different treatment than other similarly situated persons and that the disparate treatment was based on her protected class status."). Moreover, "[s]upervisory liability

cannot be based solely upon the doctrine of respondeat superior, but there must be some affirmative conduct by the supervisor that played a role in the discrimination." *Andrews,* 895 F.2d at 1478.

The Amended Complaint is devoid of any allegation that Plaintiff was treated differently from other similarly-situated people in general, or as regards his suspension and termination in particular. It also contains no allegation that Smith was discriminated against on any ground, which caused him to receive different treatment from others similarly situated.

In its February 2011 Opinion, the Court dismissed Smith's initial equal protection claim against Hood. The analysis in that Opinion applies here as well:

> While Smith has cited a federal violation, as required by § 1983, he does not provide sufficient factual allegations in support of that claim. He has not stated any fact indicating that his termination was related to a discriminatory purpose or explained how he was treated differently from others who were similarly situated. Thus, Smith's § 1983 claim cannot stand on the basis that Hood violated his right to equal protection.

(Dkt. No. 51 at 8). In his Amended Complaint, Smith did not cure the pleading deficiency identified by the Court in the equal protection cause of action in his initial Complaint. Accordingly, the Court will dismiss Smith's § 1983 equal protection claim against Hood for failure to state a claim. *Aultman v. Cmty. Educ. Centers Inc.,* 606 F. App'x 665, 668 (3d Cir. 2015) (finding that, to bring a successful § 1983 equal protection claim, plaintiff was required "to plead, among other things, that he was treated differently from similarly situated persons. Because he did not do so, the District Court properly dismissed [plaintiff's] equal protection claim.").

### 3. Count III – Breach of Contract

Count III of the Amended Complaint alleges that Defendants' conduct "constitute[s] a breach of Plaintiff's employment contract, both express and implied and a violation of the terms and conditions of plaintiff's property interest in his employment as set forth in Defendant VIHA's policies and procedures manual." (Dkt. No. 60, ¶ 24).

To state a claim for breach of contract under Virgin Islands law, a plaintiff must allege: "that a contract existed, that there was a duty created by that contract, that such duty was breached, and that he suffered damages as a result." *Chapman v. Cornwall,* 58 V.I. 431, 437, 2013 WL 2145092, at *2 (V.I. May 15, 2013).

In its February 2011 Opinion, the Court held that Plaintiff's "claim against Hood for breach of contract suffers from a critical flaw: it does not allege that he had a contractual agreement, implied or otherwise, with Hood, but only with VIHA." (Dkt. No. 51 at 13). It appears that the basis of Smith's breach of contract claim against Hood in the Amended Complaint continues to be Hood's role as Smith's supervisor.[11] *See* Dkt. No. 60, ¶ 9 (describing Hood as Smith's "immediate supervisor"). In *Nicholas v. Penn. State Univ.*, 227 F.3d 133 (3d Cir. 2000), the Third Circuit observed that if a plaintiff did not allege that he had an employment contract with his supervisor, that supervisor "cannot be liable for breach of contract." *Id.* at 145. Similarly, in *Gil v. Related Mgmt. Co.*, 2006 WL 2358574, at *3 (D.N.J. Aug. 14, 2006), the court held that an employee manual did not create a contractual relationship between a plaintiff and his supervisors.

Once again, Plaintiff has failed to cure the "critical flaw" previously found by this Court as requiring dismissal of his breach of contract claim against Hood in the original Complaint. Having failed to address that pleading deficiency, the Court will dismiss Count III of the Amended Complaint against Hood for failure to state a claim.

### 4. Count IV -- Punitive Damages

In its February 2011 Opinion, the Court dismissed Plaintiff's punitive damages claim against Hood, finding that "such damages do not constitute an actionable claim." (Dkt. No. 51 at

---

[11] Moreover, the Amended Complaint alleges that VIHA's personnel policies and procedures manual—rather than any contract between Smith and Hood—"established the terms of the contractual relationship between the parties." (Dkt. No. 60, ¶ 12).

15

15-16). In the Amended Complaint, Plaintiff again pleaded punitive damages as a separate cause of action—Count IV—and did not address the Court's previous finding.

It is well settled that punitive damages do not constitute an independent cause of action. *See Speaks v. Gov't of the V.I.*, 2009 WL 167330, at *8 (D.V.I. Jan. 14, 2009) (opining that punitive damages "cannot form a cause of action upon which a plaintiff would be entitled to relief."); *Der Weer v. Hess Oil V.I. Corp.*, 2014 WL 1387371, at *1 n.1 (V.I. Super. Ct. Mar. 21, 2014) ("Although labeled as a 'claim' for punitive damages in the complaint, punitive damages is not a separate cause-of-action, but rather a demand for a certain type of damages.").

Accordingly, the Court will dismiss Count IV of the Amended Complaint against Hood for failure to state a claim.

### 5. Dismissal with Prejudice

Under Fed. R. Civ. P. 15(a), "the court should freely give leave [to amend] when justice so requires." However, a District Court "has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them." *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002) (affirming district court's conclusion that plaintiff should not be granted second leave to amend when he was on notice of complaint's deficiencies and failed to rectify them in his first amendment); *Franks v. Food Ingredients Int'l, Inc.*, 2010 WL 3046416, at *8 (E.D. Pa. July 30, 2010) (denying leave to amend where plaintiff was put on notice of deficiencies in his claims by original motion to dismiss, but failed to correct the errors in amended complaint such as to state a cognizable cause of action).

Smith was put on notice of the deficiencies in the causes of action set forth in his original Complaint by the Court's February 11, 2011 Memorandum Opinion. (Dkt. No. 51). The February 2011 Order, which dismissed his Complaint, without prejudice, provided Smith an opportunity to

amend his complaint to correct the deficiencies. (Dkt. No. 50). Smith filed an Amended Complaint. However, as discussed above, he has failed to correct certain deficiencies of which he was previously put on notice, or otherwise plead facts that state a claim on any of his causes of action.

The Court concludes that Smith "was put on notice as to the deficiencies in his complaint, but chose not to resolve them." *Krantz*, 305 F.3d at 144. Accordingly, the Court will dismiss Smith's Amended Complaint against Hood with prejudice.

### III. CONCLUSION

For the reasons set forth above, the Court will grant Defendant Hood's Motion to Dismiss for failure to state a claim. (Dkt. No. 63). The Amended Complaint against Hood will be dismissed with prejudice.

An appropriate Order accompanies this Memorandum Opinion.

Date: May 6, 2016 _____/s/_____
WILMA A. LEWIS
Chief Judge